# MARYLAND REPORTS.

## APRIL TERM, 1880.

HENRY S. COCHRAN and ANNIE P. COCHRAN, his wife
*vs.* CATHARINE H. PASCAULT, by her husband and
next friend, FRANCIS R. PASCAULT. SAME *vs.* SAME.

*Mutual mistake as to a question of law—Application for the
Rescission of an executed Contract for the Sale of real estate—
Right of Vendors of real estate, under Covenant for further
assurance, to Cure Defective title—Equity Practice—When a
Court of Equity may interpose to rescind an Executed Con-
tract for the Sale of real estate.*

On the 5th of August, 1871, P. and wife, and L. sold and conveyed
to C. certain real estate for the sum of $40,000, and on the same day
C. and wife executed a mortgage of the land to the wife of P., to
secure the purchase money, payable in instalments. C. having
made default, the mortgagee on the 20th of August, 1878, filed a
bill for the sale of the mortgaged property to pay the instalments
then due and unpaid. Instead of answering this bill, the mortga-
gors on the 17th of October, 1878, filed a cross-bill, praying that
the sale might be rescinded and the deed and mortgage cancelled,
upon the ground that at the time of the purchase representations
were made by the vendors to the vendee as to their title to the
land, which the latter, a few days before the filing of his cross-bill
had discovered to be untrue; and he charged that he made the
purchase, accepted the deed and executed the mortgage, relying
upon the truth of these representations, and was misled and de-
ceived thereby. These representations were in the recitals of the
deed. The deed also contained a covenant on the part of P. and
wife for further assurances. P. and wife admitted that they made
the representations as to title as set out in the deed, and testified
that they believed them to be true, and continued in that belief,

until a few days before the cross-bill was filed, when they were first made aware of the defect through information received from C. C. and wife testified that they would not have accepted the deed nor have executed the mortgage, but for the fact that they relied upon and were misled and deceived by these representations. It was conceded there was no fraudulent intent or purpose on the part of the vendors. Shortly after the cross-bill was filed, and before they answered it, P. and wife, in compliance with their covenant for further assurances, at their own cost acquired the title which their deed recited, and tendered to C. a conveyance which effectually cured all defects of title. There was no pretence or proof of any damage or injury to C. resulting from the alleged misrepresentations. HELD:

That the vendors of the real estate, under their covenant of further assurance had the right, voluntarily to cure the defect in the recited title, as soon as it was discovered; and that this curing of the defective title was a complete bar to the relief sought by the cross-bill, the complainants failing to show that they had suffered any loss, injury or damage by the delay in perfecting the title.

By an agreement as to pleading, it was agreed that the cross-bill should be considered as if filed as an answer to the original bill, or as part of such answer, as C. and wife might elect, they being at liberty to file such additional answer as they might think proper, within fourteen days after the passage of a decree in the cross-bill case. And by the agreement of submission, it was agreed that the cross-bill case should be submitted on the cross-bill, demurrer, answer and replication, and the agreement of facts filed therein, and the written arguments also filed. The case made by the original bill was not submitted, and was not intended to be submitted until after a decree had been passed in the case made by the cross-bill. The mortgagors had not filed an answer to the original bill in accordance with the right reserved in the agreement, and the case on the original bill was not at issue. HELD:

That in this state of the pleadings the Court could not properly pass a decree for the sale of the mortgaged premises.

A Court of equity should never interpose to rescind a contract for the sale of lands consummated and evidenced by a deed duly executed, except in a clear case; and never for an alleged fraud unless the fraud be made clearly to appear; never for alleged false representations, unless their falsity is certainly proved and the complainant has been deceived and injured by them.

Cochran and Wife *vs.* Pascault and Wife.

APPEALS from the Circuit Court for Cecil County, in Equity.

The nature of the case is stated in the opinion of the Court. The Court below passed a decree in both cases, dismissing the cross-bill of Cochran and wife and directing a sale of the mortgaged premises as prayed by the original bill of Pascault and wife. From these decrees the present appeals were taken.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ROBINSON, J.

*Clinton McCullough* and *James B. Groome*, for the appellants.

Courts of law and of equity treat material misrepresentations, such as those by which Cochran and wife, as shown by the statement of facts, were misled and deceived, as therein stated, as fraudulent, whether the party, when making them, knew them to be false, or believed them to be true, but whether they are to be so regarded or not, the effect of such misrepresentations is to entitle the party misled and deceived thereby into making a contract, which he would not otherwise have executed, to his election, upon discovering the deception, either to confirm the contract, or to invoke the aid of a Court of equity for its rescission; and the party so misled and deceived cannot be deprived of that election by any act of the other party. *South vs. Richards*, 13 *Peters*, 36.

In *Maddox Chan.*, 208, it is thus stated: "If, indeed, a man upon a treaty for any contract make a false representation, whether knowingly or not, by means of which he puts the party bargaining under a mistake upon the terms of bargain, it is a fraud, and relievable in equity."

The doctrine thus laid down is almost the very words used by the Chancellor in the case of *Neville vs. Wilkinson*, 1 *Brown Chan. Cases*, 546, with the exception of the words,

"whether knowingly or not;" and the part of the propo-
sition embraced in those words, is founded on the case of
*Ainslie vs. Medlycott,* 9. *Vesey,* 21, which fully sustains Mr.
Maddox. See the cases of *McFenan vs. Taylor and Massie,*
3 *Cranch,* 281, and *Fulton vs. Roosevelt,* 5 *John. Chan.
Reps.,* 174.

The principles of these cases we consider founded in
sound morals and law. They rest upon the ground that
the party selling property must be presumed to know
whether the representation of it is true or false. If he
knows it to be false it is fraud of the most positive kind;
but if he does not know it, then it can be only from gross
negligence; and in contemplation of a Court of equity,
misrepresentation founded on mistake resulting from such
negligence, is fraud. *Evans vs. Bicknell,* 6 *Vesey,* 180
*and* 189; *Jeremy,* 385 *and* 386.

The purchaser confides in it, upon the assumption that
the owner knows his own property and truly represents
it, and as was well argued in the case in Cranch, it is
immaterial to the purchaser whether the misrepresentation
proceeded from mistake or fraud. The injury to him is
the same, whatever might have been the motives of the
seller.

In *Woods vs. North,* 6 *Humphreys,* 309, the defendant was
executor of his father's will, and acting under a clause of
the will, which the Court afterwards decided did not
confer upon him the power of sale, exposed to sale the
land of the deceased, and sold it to the complainant, and
executed to him a deed in which he asserted that he had
a right to sell and convey the lands as executor. This
the Court says, "is an express misrepresentation," and
that "the very proposition to sell the land as executor
was a species of fraud." The bill was filed to rescind the
contract, and pending the suit the defendant procured
title and tendered it to the complainant.

The Court decreed a rescission of the contract, and said:
"If a party fraudulently sell and convey an estate to

which he has no title, the vendee, who comes into equity, will not be compelled to take an after-acquired title from the vendor." See *Edwards vs. McLeay, Cooper's Chan. Cases,* 308; *Hitchcock vs. Giddings,* 4 *Price's Reports,* (*Exch.,*) 135; *Gardner vs. Mayor, &c. of Troy,* 26 *Barbour,* 423; *Allen vs. Hammond,* 11 *Peters,* 63; *Rawlins vs. Wickham,* 3 *De Gex & Jones,* 304; *Rimer vs. Dugan,* 39 *Miss.,* 477; *Davis vs. Heard,* 44 *Miss.,* 51; *Halls vs. Thompson,* 1 *S. & M.,* 485; *Foster vs. Kennedy's Adm'rs,* 38 *Ala.,* 363; *Foster vs. Gressett,* 29 *Ala.,* 393; *Blackman vs. Johnson,* 35 *Ala.,* 252; *Kelly vs. Allen,* 34 *Ala.,* 663; *Harding vs. Randall,* 15 *Maine,* 332; *Warner vs. Daniels,* 1 *Wood. & Minot,* 90; *Hart vs. Swaine, L. R.,* 7 *Ch. Div.,* 42; *Reese vs. Wyman, et al.,* 9 *Ga. Rep.,* 430; *Green's Adm'r vs. Bryant,* 2 *Kelly,* (*Georgia,*) 66; *Dalby vs. Pullen,* 3 *Simon,* 29; *Farrer vs. Nightengal,* 2 *Esp.,* 639; *Lanier, et al. vs. Hill, et al.,* 25 *Ala.,* 558; *Mason, et al. vs. Crosby, et al.,* 1 *Woodbury & Minot,* 342; *Shackelford vs. Handley's Ex'rs, et al.,* 1 *A. K. Marsh,* 496; *Garnett vs. Macon,* 2 *Brockenbrough's Rep.,* 185; *Young vs. Hopkins,* 6 *Monroe,* 23; *Daniel vs. Mitchell, et al.,* 1 *Story Rep.,* 189; *Joice and Wife vs. Taylor,* 6 *Gill & John.,* 58; *Marbury vs. Stonestreet,* 1 *Md.,* 153; *Partridge vs. Usborne,* 5 *Russ.,* 195; *Taymon vs. Mitchell,* 1 *Md. Chan. Dec.,* 503; *Daniel vs. Mitchell,* 1 *Story C. C.,* 172; *Ainslie vs. Medlycott,* 9 *Ves.,* 21, *note a.*

Was the misrepresentation of Pascault and wife, as to their title, a material one? When it is recollected that Pascault and wife represented to Cochran that their deed would convey to him the legal fee in a farm, estimated to be worth $40,000, subject only to liens aggregating $9605.09, when in fact he only took under their deed the legal fee in one undivided third of said farm, subject to the aggregate amount of said liens—in other words, that they represented to him that they were conveying to him the legal title to lands worth $30,394.91, over and above

the liens charged upon them, when, in point of fact, they were only conveying to him the legal fee to lands worth $3728.24, over and above the liens so charged, it will be understood how material was the misrepresentation, and how grossly Cochran was deceived and misled thereby to his injury.

The purchaser of an entirety will not be compelled to take an undivided share of an estate, (*Atty. Gen. vs. Day*, 1 *Ves.*, 218; *Roffey vs. Shallcross*, 4 *Madd.*, 227; *Drewe vs. Hansen*, 6 *Ves.*, 678; *Dalby vs. Pullen*, 3 *Sim.*, 29; *Casamajor vs. Strode*, 2 *My. & K.*, 726; *Poole vs. Shergold*, 1 *Cox*, 274;) nor an estate or interest essentially different from that which he agreed to purchase. (*Hart vs. Swaine*, *L. R.*, 7 *Ch. Div.*, 42; *Flight vs. Booth*, 1 *Bing.*, *N. C.*, 377, 1 *sc.* 190.) "And where a tenant in common, or co-parcener sells the entirety to one who is ignorant of the defect, the purchaser may elect whether he will rescind the contract, or demand a conveyance of the undivided share, with a proportionate abatement of the purchase money." (*Napier vs. Darlington*, 70 *Penn.*, 64; *Erwin vs. Myers*, 10 *Wright*, 116; *Clarke vs. Reins*, 12 *Grattan*, 98.) "And where a contract has been entered into on the faith of a state of things which does not exist, (*Emmerson's Case*, *L. R.*, 1 *Ch.*, 433, and 36 *L. J. Ch.*, 177,) or where the one party has made a mistake to which the other by his acts unintentionally contributed, the contract will be rescinded." (*Torrance vs. Bolton*, *L. R.*, 14 *Eq.*, 124, and 41 *L. J. Ch.*, 643.)

*James A. Pearce* and *S. Teackle Wallis*, for the appellees.

It is well settled that it is not every misrepresentation which will authorize relief in equity, and that where it is upon a fact equally open to the inquiry of both parties, there is no room for a Court of equity to interfere. *Story's Eq. Juris.*, secs. 150–151.

Cochran and Wife *vs.* Pascault and Wife.

To entitle a purchaser to rescind his contract (even when executory,) upon the ground of material misrepresentations made by the vendor as to his title, it must appear that he was actually misled by them. *Ely vs. Stuart,* 2 *Md.,* 408; *Story's Eq. Juris.,* secs. 191, 200.

Mrs. Pascault's deed to Cochran of January 5, 1871, bore on its face the fact that her title was under the will of her mother, and under the partition proceedings in the Orphans' Court of Baltimore City, in which the defect of title complained of had its origin. The representation of that deed was that Mrs. Pascault was seized under *that will,* and in virtue of that *allotment or partition.* This was a *fact,* and whether that fact created a title in fee, as Mrs. Pascault supposed, or not, was a question for investigation by Cochran. If he accepted her conclusion then as correct, when he was pointed to the source of her title, he has only his own conduct to complain of here.

"Nothing but what is plainly injurious to good faith ought to be considered in equity as sufficient to impeach a contract, such as criminal artifices to induce another to enter into the contract, and these should be legally substantiated by proof." *Pothier on Obligations, page* 19, *n.* 30.

Cochran will be presumed to have inspected the derivations of title, and cannot be aided in equity in withholding the purchase money. *Payne vs. Cabell,* 7 *Monroe,* 198, 202.

Courts of equity will not aid parties who will not use their own discretion as to alleged misrepresentations. *Story's Eq. Juris.,* 199, 200, *a.; Hiern vs. Mill,* 13 *Vesey,* 114.

The assertion of the vendor that his title is good, is not fraudulent, unless he knows that a better title exists in another. *Spence vs. Duren,* 3 *Ala.,* 251.

In a case in California, Judge Field said, no action for false or fraudulent misrepresentation as to the *naked fact*

of title in the vendor of real estate can be maintained by a purchaser in possession under a conveyance with express covenants. *Peabody vs. Phelps,* 9 *Cal.,* 213. See *Clanton vs. Burgess,* 2 *Devereux's Eq.,* 13.

It is not ground for the rescission of a contract for the sale of land, at the instance of a vendee in possession, that the vendor had not title when the bond was made, if he obtains the title afterwards. *Evans vs. Bolling,* 5 *Ala.,* 543.

Although the vendor had no title at the commencement of the suit, yet if the title has become perfected by lapse of time, his contract will not be rescinded. *Wickliffe vs. Lee,* 5 *B. Monroe,* 543.

A vendor of land may complete the title of the vendee pending a suit to rescind the contract for a defect in the title at any time before hearing. *Clanton vs. Burgess,* 2 *Dev. (N. C.) Eq.,* 13 ; *Westall vs. Austin,* 5 *Iredell, (N. C.) Eq.,* 1.

This is true even in the case of concealment by the vendor, "where an incumbrance was concealed by the vendor from the vendee, but was removed by the vendor before decree on a bill filed for rescission by the vendee, the Court refused to rescind the contract. *Davidson vs. Moss,* 6 *Miss.,* (5 *Howard,*) 673.

The deed from Pascault and wife to Cochran, does not any where allege that Pascault and wife, held a *legal* estate in fee in any part of the land they conveyed  Th.e language, is, that Catherine H. Pascault was seized in fee, in her own right of certain lands acquired under her mother's will, and under a certain partition in. the Orphans' Court for Baltimore City, and that Francis Pascault was seized of an equitable estate in certain other land allotted by the same partition to Augusta W. Lusby, and which he purchased from her. The Court will observe that there is no covenant of warranty, none of seisin, none against incumbrances; none of right to con-

vey, the only covenant is one looking to *future* perfection of the title, which is nowhere in the deed represented to be then perfect; namely, "to *execute and deliver* or procure to be executed and delivered such other and further assurances as may be necessary and proper to secure said lands."

Now if this covenant could be construed as a covenant of full title, no relief could be had by way of rescission or enjoining collection of purchase money until actual eviction had occurred ; but if it is regarded according to the plain import of the words used, how clear does it become in that light, that there has been no misrepresentation by the appellees ; how plain that Cochran accepted such title as the partition and allotment referred to in her deed had vested in Pascault and wife, and that he was content, in the language of the Court in *4th Gill*, 290, to guard that title with a single covenant, (justly regarded by the draftsman of the deed as appropriate,) binding his vendors thereafter to execute and deliver, or procure to be executed and delivered, such other and further assurance as should be necessary and proper to secure said lands.

As the Judge says who delivered the opinion in this case below, " the vendee, when he exacted and accepted this covenant, not only acquired the right to demand that his title should be made good, but bound· himself to accept a perfected title if tendered to him by the vendors, within a reasonable time after the defect was made known to them."

This they have done by procuring from Augusta W. Lusby and others, a deed, and in executing and tendering to Cochran, their own deed.

They had the right to· do this at any time after suit brought on the covenant in their first deed and before judgment obtained.  They were not obliged to do so until demand therefor was made by Cochran, but as soon as they were informed of the necessity or desirability of

further assurances they procured the same and tendered them in strict accordance with their covenant.

There is no pretence that Cochran has suffered a particle of loss by reason of the supposed defect of title. It was not in fact a defect of title, viewed in the language of their deed to Cochran.

In any aspect of this case there is no just ground for rescinding this contract, or granting any relief to Cochran. There is no allegation of fraud. The charge of misrepresentation even vanishes, when the recitals of the deed are compared with the proceedings for partition, and the language and purpose of the covenant in the deed is considered. "A purchaser of land in possession under his contract, with covenants of warranty cannot, in the absence of fraud, or of the insolvency of his vendor, maintain a cross-bill on account of the defect of his title, when the vendor files a bill to foreclose a mortgage given to secure the purchase money." *Magee vs. McMillan*, 30 *Ala.*, 420.

MILLER, J., delivered the opinion of the Court.

The main question arising on these appeals is presented in this way:—On the 5th of August, 1871, Francis R. Pascault and Catharine H. Pascault his wife, and Louisa Lusby, sold and conveyed two parts of a tract of land in Cecil County, called "Greenfield," to Henry S. Cochran for the sum of $40,000, and on the same day Cochran and wife executed a mortgage of the land to Mrs. Catharine Pascault to secure the purchase money, which, by the terms of the mortgage, was made payable in instalments, and on a long credit. Cochran having made default, the mortgagee, on the 20th of August, 1878, filed a bill for the sale of the mortgaged property to pay the instalments then due and unpaid. Instead of answering this bill, the mortgagors, on the 17th of October, 1878, filed a cross-bill, praying that the sale may be rescinded, and the deed and mortgage cancelled, and the question is, are they entitled to this relief?

. The ground of complaint is, that at the time of the purchase representations were made by the vendors to the vendee as to their title to the land, which the latter, a few days before the filing of his cross-bill, had discovered to be untrue, and he charges that he made the purchase, accepted the deed and executed the mortgage, relying upon the truth of these representations, and was misled and deceived thereby. These representations are in the recitals of the deed, and are to the effect, that Mrs. Pascault was "*seized in fee in her own right of,*" one part of Greenfield, which is described and conveyed, "which she acquired under the will of her late mother, Mary C. Lusby, deceased, which will was proved and recorded in the office of the Register of Wills for Baltimore City, in Liber I. P. C., No. 31, folio 336, &c., and which said lands were allotted to her in the partition of her mother's estate, as set forth among the records of the Orphans' Court, in Liber Proceedings, I. P. C., No. 38, folio 105, &c.;" and that Mr. Pascault was "seized of an *equitable estate in fee* of" the other part "which had been allotted to Augusta W. Lusby in the allotment aforesaid, and which comprises all her share of Greenfield, except the part thereof she sold to John P. Walmsley." The deed also contains a covenant (and it is the only covenant in it) on the part of Pascault and wife, that they will execute and deliver, or procure to be executed and delivered, such other and further assurances as may be necessary and proper to secure the said lands.

This will was admitted to probate in 1863, and the partition referred to was made in 1867, by the executors under the order and direction of the Orphans' Court. It is conceded that that Court had no authority or jurisdiction in the premises, and consequently Pascault and wife did not by this partition acquire the legal title in severalty to the part thus allotted to the wife, and no deeds, at the time, were executed between the parties in pursuance of the

partition.   It appears, however, from the statement of facts, that Pascault and wife, immediately after the partition was made, entered and held exclusive possession of the part thus allotted to the wife up to the date of the deed to Cochran, when they delivered possession thereof to him, in pursuance of the deed, and he has never been evicted or in anywise disturbed in that possession.   Pascault and wife admit they made the representations as to title set out in the deed, and testify that they believed them to be true, and continued in that belief until a few days before the cross-bill was filed, when they were first made aware of the defect through information received from Cochran.   On the other hand, Cochran and wife testify that they would not have accepted the deed, nor have executed the mortgage but for the fact that they relied upon and were misled and deceived by these representations.

It is conceded there was no fraudulent intent or purpose on the part of the vendors, and from the fact that the *source of title* was disclosed to the vendee and stated on the face of the deed, it is evident that both parties supposed the partition referred to was valid and effectual to convey in severalty the parts allotted to the several devisees.   It was, therefore, a case of mutual mistake as to a question of law.   Shortly after the cross-bill was filed, and before they answered it, Pascault and wife obtained from all the other parties interested, (all of whom were of full age,) a conveyance, by which the legal title to this land was vested in them, and they then executed a deed, conveying the same to Cochran, and tendered it to him, but he refused to receive it, save upon conditions which they declined to accept.   There can be no question but that this deed effectually cured all defects of title.

This then is a case in which a vendee of real estate, after seven years of undoubted possession, seeks in a Court of equity the rescission of an executed contract of

sale, the annulment of the deed by which it was consummated, and cancellation of the mortgage given to secure the purchase money. And he seeks this relief without pretence or proof of any actual, positive or intentional fraud on the part of the vendors, or of any damage or injury to himself resulting from the alleged misrepresentations, and that too in a case where the source of the title in respect to which the representations were made and in which the defect existed, was stated on the face of the deed, and where, pending the suit for rescission, the vendors, in compliance with their covenant for further assurance, have, at their own cost, acquired the title which their deed recited, and have tendered to the complainant a conveyance which will make his title perfect. We have found no well considered case which has decided that under such circumstances it is competent for a Court of equity to rescind the contract. There is no question here of specific performance. The object is to rescind an executed contract for the sale of real estate, consummated and evidenced by the most solemn instrument known to the law. To do this is an exertion of the most extraordinary power of a Court of equity, a power that ought not to be exercised except in a clear case, and never for an alleged fraud unless the fraud be made clearly to appear; never for alleged false representations unless their falsity is certainly proved, and unless the complainant has been deceived and *injured* by them. *Atlantic Delaine Co. vs. James,* 4 *Otto,* 207; *McShane vs. Hazlehurst,* 50 *Md.,* 107. Injury resulting from the misrepresentations, even when they are knowingly and fraudulently made, is as essential to relief in equity where rescission of an executed contract is sought, as it is in an action at law for deceit. The case of *Kimball vs. West,* 15 *Wallace,* 379, (a case in one respect very similar to this,) affords a strong illustration of this doctrine. There a bill was filed to rescind a contract for the sale of lands

which had been fully executed by a conveyance with a covenant of warranty, and payment of the purchase money. The bill averred that the vendor fraudulently represented to the agent of the purchasers that his title to the whole tract was perfect, and fraudulently concealed the pendency of an ejectment suit for the more valuable part of it, in which a recovery was subsequently had against him. On this question of concealment and fraudulent representations testimony was taken on both sides, which (as the report states,) did not leave the matter free from doubt. But before the cause came to final hearing, the defendant purchased the outstanding and conflicting title to the part involved in the ejectment suit, and tendered to the complainants such conveyances as made their title perfect, and the Court therefore dismissed their bill. On appeal it was argued by the appellants' counsel that there was confessedly misrepresentations by the vendor as to five-twelfths of the whole tract, and that he could not by coming in now at the eleventh hour and offering a good title destroy their right to a rescission of the contract, or at least to compensation for the portion included in the ejectment suit, and to illustrate he puts this case: "Suppose the purchasers bought for immediate re-sale on a high but falling market, obviously they are not made whole by the tender of a good title now, their opportunity of sale is gone and their lost time and pains is their profit." But the Supreme Court speaking by Mr. Justice MILLER puts aside all consideration of the question of fraud, and expresses its views of the case briefly thus: "We are of opinion the decree of the Court below was clearly right. The plaintiffs had paid their money and accepted of the defendant his deed with a clause warranting the title. For any defect in that title the law gave them a remedy by an action on the covenant. But when declining to pursue that remedy, they apply to a Court of equity to rescind the whole contract, thereby compelling

the defendant to repay the sum of $22,000, and receive back the title which he had conveyed to the plaintiffs, the necessity for such a decree to obtain the ends of justice must be very clear before it will be given. When therefore it appears that at the time of the hearing the defendant is able to remedy the supposed defect in his title, and in point of fact secures and makes good to the complainants, at his own cost, all that he conveyed to them originally, the complainants must show some loss, injury or damage by the delay in perfecting the title, before they can claim a rescission of the contract. And even if this could be shown, which is not attempted in this case, the Court, as a general rule, would not be authorized to decree a rescission, if compensation could be made for the injury arising from the delay in making good the original defect in the title." So again in *Clanton vs. Burgess*, 2 *Dev. Eq.*, 13, (which is also a case in many respects similar to this,) there was a bill to rescind a contract for the sale of land consummated by a deed in fee, with covenant for quiet enjoyment, and also praying for an injunction to restrain execution of a judgment upon the bond given for the purchase money. The bill charged that the vendor represented he had a good title in fee, that the complainant made the purchase confiding in this representation, and that in truth the defendant had not an estate in fee simple in the land. Pending the suit the defendant obtained from the proper parties a deed conveying the land in fee simple to the complainant, and it was filed in the cause for his use. The Court held, that the vendor had the right to supply the defect at any time before the hearing, and dismissed the bill.

The propriety of allowing the vendors thus to cure the defective title pending the suit for rescission is peculiarly prominent in the present case, where the vendee has not only accepted a deed reciting the source of the title which it alleges to be a title in fee, but a deed in which he exacted

and the vendors gave a covenant for further assurance. Now whatever may be said of the inability of Mrs. Pascault, the wife, to enter into this covenant, there can be no doubt as to its binding obligation upon the husband, and there is no allegation or proof of his inability to respond in damages in an action at law thereon, nor can there be any question as to the right of the vendee to file a bill in equity as against him for its specific performance. This covenant is one of great importance, since it relates both to the title of the vendor and to the instrument of conveyance to the vendee, and operates as well to secure the performance of all acts necessary for supplying any defect in the former as to remove all objections to the sufficiency and security of the latter. Its use is obvious, particularly as respects relief to be given under it by a Court of equity upon a bill for its specific performance, to which recourse is more frequently had than to an action for damages in a Court of law. *Rawle on Cov. for Title*, 203, 204. "If the title prove bad," says Sir Edward Sugden, "and the defect can be cured by the vendor, the purchaser may file a bill in equity for a specific performance of the covenant for further assurance. And a vendor who has sold a bad title, will, under a covenant for further assurance, be compellable to convey any title which he may have acquired since the conveyance, although he actually purchased such title for a valuable consideration." *Sugden's Vend. and Pur.*, ch. 15, sec. 4, pl. 14. In the present case, however, there was no demand for specific performance; but the vendors acting voluntarily under their covenant, and at their own cost, effectually cured the defect before the bill for rescission could be brought to a hearing. It seems to us there is an element of mutuality in such a covenant, and that in this case the parties by giving and receiving a deed with these recitals, and this covenant must have contemplated this very action on the part of the vendors. The covenant while it secured

the vendee a right of action at law for damages for a
breach of it, and a right to enforce in equity its specific
performance, gave to the vendors the right, if they so chose,
to act under it voluntarily as they have done, and to
cure the defect in the recited title as soon as it was dis-
covered. We have no doubt whatever as to their right
so to act, and without considering other grounds of objec-
tion to the cross-bill, we hold that this curing of the defec-
tive title is a complete bar to the relief it prays for, unless
the complainants have shown that they have suffered
"some loss, injury, or damage by the delay in perfect-
ing the title."

In the agreement of facts, it is admitted that the value
of real estate generally in Cecil County has greatly depre-
ciated since the 5th of August, 1871, and in consequence
of this general decrease in value, the land conveyed by
the deed of that date, as well as other real estate in the
neighborhood, would not now sell for nearly as much as
it would then. This is the only foundation for an argu-
ment that the purchaser in this case has suffered any loss
by reason of his bargain. But this depreciation in values
has no relation whatever to the title to the land sold, nor
is it in any way connected with the alleged misrepresen-
tations of that title. Even in a case for specific perform-
ance, it would furnish no excuse to the purchaser. If
this were an executory contract in writing, and the ven-
dors had filed a bill for its specific execution, and were
ready when the bill was filed to convey a good title, depre-
ciation in value between the date of the contract and the
filing of the bill, where time was not material or of the
essence of the contract, would not have sufficed to prevent
a decree. In *The Marble Co. vs. Repley,* 10 *Wallace,* 357,
it was said: "It is by no means clear that a Court of
equity will refuse to decree the specific performance of a
contract, fair when it was made, but which has become a
hard one by the force of subsequent circumstances," and

Mr. FRY, in his work on *Specific Performance, sec.* 252, asserts, that "the question of the hardship of a contract is generally to be judged of at the time it was entered into; if it be then fair and just, it will be immaterial that it may, by force of subsequent circumstances or change of events, have become less beneficial to one party, except when these subsequent events have been in some way due to the party who seeks the performance of the contract." So in *Williard vs. Tayloe,* 8 *Wallace,* 571, the Court, by Mr. Justice FIELD, says: "The question in such cases always is, was the contract, at the time it was made, a reasonable and fair one? If such were the fact, the parties are considered as having taken upon themselves the risk of subsequent fluctuations in the value of the property, and such fluctuations are not allowed to prevent the specific enforcement." And before these decisions of the Supreme Court, it was decided by this Court, that where a contract relating to real estate, is in writing, and is in its nature and circumstances unobjectionable, it is as much a matter of course for a Court of equity to decree a specific performance of it, as it is for a Court of law to give damages for a breach of it; that the fairness or hardship of a contract, like all its other qualities, must be judged of at the time it was entered into; if it was *then* certain, mutual, fair in all its parts, and for an adequate consideration, it is immaterial that by force of subsequent circumstances it has become less beneficial to one party, unless such change is in *some way the fault* of the party seeking its specific execution. *Smoot vs. Rea & Andrews,* 19 *Md.,* 405; *Brewer vs. Herbert,* 30 *Md.,* 301. But here the contract was executed. The vendee accepted the deed, took possession under it, and for seven years has remained in the undisturbed enjoyment of the rents and profits of the estate. There is no proof that during all this period he ever offered to sell the land and was prevented from doing so by reason of the defect in the title. There is, therefore,

nothing to show that this defect ever prevented him from obtaining a higher price for the land than he agreed to give for it, or compelled him to retain it after an attempt to sell, so as to throw upon him the loss resulting from continued and increased depreciation. But more than this—he paid no portion of the purchase money in cash at the date of the deed, nor has he paid any part of the principal since, and he now confesses his entire inability to comply with the conditions of payment stipulated in the mortgage. Moreover, the mortgage itself, which was given to secure the whole purchase money, does not even contain the usual covenant on the part of the mortgagor to pay the mortgage debt. So far then as the record enables us to judge, the loss, as between these parties, arising from the depreciation in value, will fall on the vendors rather than on the vendee. But however this may be, it clearly appears that within less than *ten days* after the defect was first discovered, it was cured by the vendors and a perfect title tendered to the vendee, and we find in the record no proof whatever of any loss or damage resulting to him by delay on their part in perfecting the title. We are, therefore, of opinion that so much of the decree appealed from as dismisses the cross-bill was clearly right, and must be affirmed.

But the decree further orders a sale of the mortgaged property for payment of the instalments now due. This part of the decree seems to have been passed, and could only have been rightfully passed, upon the assumption that the case upon the original bill by the mortgagee stood ready for hearing and had been submitted for decree together with the case made by the cross-bill. In this we think the Court below fell into error. By an agreement as to pleading which appears in the record, it was agreed that the cross-bill should be considered as if filed as an answer to the original bill, or as part of such answer as the said Cochran and wife may elect, "they

being at liberty to file such additional answer as they may think proper, within fourteen days *after the passage of a decree* in the cross-bill case." And by the agreement of submission it was "agreed that *this* case," (that is the cross-bill case,) "shall be submitted on the cross-bill, demurrer, answer and replication, and the agreement of facts filed therein, and the written arguments also filed." From this it seems to us very plain that the case made by the original bill was not submitted, and was not intended to be submitted until after a decree had been passed in the case made by the cross-bill.

In fact the case on the original bill was not then *at issue.* No answer to that bill had then in fact been filed by the mortgagors in accordance with the right reserved in the agreement. It is true that so far as this record is concerned we cannot see that the appellants have any valid defence against a decree under the original bill, and it is also plain that a purchaser at a sale under the decree now passed would acquire a clear title. But it is not for this Court to declare that these mortgagors have not defences which do not appear in this record, to make to that bill, nor can we deprive them of the right expressly reserved to them, to make such defences if any they have, apart from those set up in the cross-bill. It follows that this part of the decree must be reversed.

A decree will therefore be passed by this Court, affirming so much of the decree below of the 11th of June, 1879, as dismisses the cross-bill, and reversing the residue of that decree and remanding the cause for further proceedings.

*Decree affirmed in part,*
*and reversed in part, and*
*cause remanded.*

(Decided 2nd June, 1880.)