# CARRIE L. LUCAS AND EDWARD D. LUCAS

*vs.*

# JASPER WALTER LONG.

*Specific performance; rules for——; misrepresentations; when a defense; fraud; must work actual injury.*
*Bad bargains: duty of purchaser.*

Where a contract relating to real estate is in writing, and its nature and circumstances unobjectionable, it is as much a matter of course for a court of equity to decree its specific performance as it would be for a court of law to give damages for its breach.     p. 427

In such a case, the fairness or hardship of a contract, like its other qualities also, must be judged as of the time it was entered into.     p. 428

If it was then certain, mutual, fair in all its parts, and for an adequate consideration, it is immaterial that by force of subsequent circumstances it should have become less beneficial to one party, unless such change is in some way the fault of the party seeking its specific performance.     p. 428

If the contract was reasonable and fair when entered into, it will be presumed the risk of subsequent fluctuations in value was assumed by the parties, and such fluctuations will not be allowed to prevent specific performance of the contract.     p. 428

Misrepresentations as to the purpose for which it is proposed to purchase a piece of property, in order to be a ground for refusing to decree a specific performance of the contract, must not only be false, but they must have been material to the contract or transaction which is to be avoided, and must have worked actual injury to the defendant, or must have been the moving cause for entering into the contract of sale.     p. 429

. But a purchaser is not bound to make the party he buys from as wise as himself; and every man must bear the loss of a bad bargain legally and honestly made.                p. 430

The fraud must work an actual injury to the party resisting the enforcement of the contract, and it must appear, not only that he did rely upon the false statement, but that he had the right to rely upon it, in the full belief of its truth.        p. 429

A statement that a tract of land was being purchased for a dairy farm, when the tract was not cleared and was totally unfit for dairy farming, and where the owner knew and claimed that it was specially valuable for sub-division and development, can not be regarded as a material misrepresentation, sufficient to form the basis for a refusal to decree the specific performance of a contract of sale, where the purchase was really intended for such last mentioned purpose.        p. 429

*Decided April 7th, 1915.*

Appeal from the Circuit Court for Montgomery County. (In Equity.)    (PETER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*William J. Lambert* (with whom was *Charles W. Pretty-man* on the brief), for the appellant.

*Jackson H. Ralston* (with whom were *Wm. E. Richardson* and *Harvey T. Winfield* on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is a proceeding by a bill in equity to enforce the specific performance of a written contract for the sale of certain real estate containing 179 acres more or less, situate

in Montgomery County and belonging to Carrie L. Lucas, one of the defendants in the case.

It appears from the record, that on the 2nd day of September, 1911, the plaintiff and defendants executed the following written contract, called Agreement No. 1. It is set out in the record and is as follows:

"Washington, D. C., September 2d, 1911.

"Received of J. W. Long a deposit of two hundred dollars ($200) to be applied as part payment in purchase of one hundred and seventy-nine (179) acres, two roods and sixteen perches of land, situated in Montgomery County, Maryland, being the same land conveyed to Carrie L. Lucas by Clarence D. and Olive P. Kefauver by deed dated December 7th, 1910, and recorded in Liber 216 and folio 374.

"The purchase price is to be ninety dollars ($90) per acre. Deposit above stated two hundred ($200) dollars, one thousand ($1,000) dollars September 14, 1911; five thousand two hundred forty-one dollars ($5,241) January 2d, 1912, and the purchasers agree to assume a mortgage of nine thousand six hundred and seventy-four dollars ($9,674), with interest at the rate of six per cent., from September 14th, 1911.

"Property sold as a good title, subject to the above-mentioned mortgage, or deposit to be returned and sale declared off. Seller is to furnish abstract now in his possession.

"Taxes, interests, rents to be adjusted to date of transfer, except as above stated.

"Purchaser is required to make full settlement in accordance with the terms of sale as above stated, or the deposit will be forfeited.

"Seller to give the usual special warranty deed, conveyancing at purchaser's cost.

Carrie L. Lucas,

Edward D. Lucas,

Owners.

"Approved by J. W. Long, Purchaser."

Afterwards, on or about the 14th of September, 1911, a second contract was executed between the parties, the one here sought to be enforced, and this contract which is called the second agreement, was substituted by the parties for the first contract.    It is signed by the parties and is as follows:

"Washington, D. C., September 2d, 1911.

"Received from J. W. Long, a deposit of two hundred dollars to be applied as part payment in purchase by him or his assigns of one hundred seventy-nine (179) acres, two rods and sixteen perches of land situated in Montgomery County, Maryland, being the same land conveyed to Carrie L. Lucas by Clarence D. and Olive P. Kefauver by deed dated December 7th, 1910, and recorded in Liber 216 and folio 374, among the land records of the above mentioned Montgomery County, Maryland.

"The purchase price is eighteen thousand two hundred and sixty dollars, payable on the following terms: Two hundred ($200) cash in hand, receipt of which is hereby acknowledged, seven thousand and sixty-five dollars and seventy-eight cents ($7,065.78) on or before January 2, 1912, and the purchaser or his assigns, agree to assume a mortgage now on the property and held by W. W. Anderson for the sum of Ten thousand six hundred and seventy-four dollars ($10,674), with accrued interest to the amount of three hundred twenty dollars and twenty-two cents ($320.22), due and payable September 5, 1911.  Such assumption and taking over of the mortgage by the purchaser and liability thereon to date from September 14, 1911, prior to that date the seller is liable for all unpaid interest and other payments of whatsoever kind except as above mentioned.

"Property is hereby sold as of good title, subject to the above mentioned mortgage or the deposit of two hundred dollars ($200) is to be returned to the purchaser or his assigns and the sale declared off.  The seller is to furnish abstracts on the above mentioned property now in his possession.

"Taxes, interests, rents to be adjusted to date of transfer, except as above stated.

"The purchaser or his assigns is required to make full settlement in accordance with the terms and conditions of this contract and title deed to be made and delivered to him or his assigns on the payment of the above mentioned seven thousand and sixty-five dollars and seventy-eight cents ($7,065.78), January 2nd, 1912, or the above mentioned deposit will be forfeited by him.

"Upon the payment to Mr. W. W. Anderson of one thousand dollars ($1,000), due him on September 15, 1911, as a payment on the principal of the above-mentioned mortgage, it is hereby agreed and understood that said Anderson is to deliver to Carrie L. Lucas the cancelled note for said one thousand dollars ($1,000), and Carrie L. Lucas is to deliver the same cancelled note to J. W. Long or his assigns, upon delivery of deed and the making of the payment of seven thousand and sixty-five dollars and seventy-eight cents on January 2nd, 1912.

"The seller is to give the usual special warranty deed, conveyance at cost of purchaser."

It also appears, that at the time of the execution of the second agreement, the defendants made and delivered to the plaintiff the following agreement:

"We hereby agree to pay R. E. L. Yellott and J. W. Long a commission of ten per cent. (10%) on eighteen thousand two hundred and sixty dollars ($18,-260), the price at which they have sold our property consisting of 179 acres in Montgomery County, Maryland. Commission to be paid on date of transfer. No commission to be paid unless the property is sold according to the terms of the contract entered into this day between J. W. Long and Carrie L. and Edward D. Lucas.

"Witness our hands and seals this 2d day of September, 1911.

.....................(Seal)
.....................(Seal)."

The bill sets out in substance that the plaintiff has complied with the terms of the agreement and is ready, willing and able to pay the sum of money required by the contract to be paid, but the defendants refused and still refuse to execute a deed for the property in accordance with their contract.

By the fourth paragraph of the bill it is alleged that the plaintiff on the 14th of September, 1911, in accordance with the terms of the agreement obtained from Wm. W. Anderson, the one thousand dollar note mentioned therein and after the note was duly cancelled, delivered the same to the defendant, Edward D. Lucas, who was authorized and did receive and accept the same on behalf of himself and the defendant, Carrie L. Lucas.

It is further alleged by the bill that on the 2nd of January, 1912, the plaintiff tendered to the defendant the sum of money which under the terms of the agreement it was provided she was to be paid, on that day, and also tendered to her a deed to be signed by herself and husband, conveying the land to him, in accordance with the contract, but the defendant refused to accept the money or to execute the deed.

That by a letter dated the 2nd day of January, 1912, the attorney for the defendants, notified the plaintiff that the defendants did not recognize any liability under the agreement and refused to comply with the terms thereof.

The defendants in their answer to the bill, admit the execution of the contract, the payment of the deposit of two hundred dollars, in part payment of the purchase money and that the $1,000 note was cancelled and delivered to them in accordance with the terms of the contract, but they deny the tender of the money as alleged and insist that the contract is not a valid and binding one, and that its enforcement by a Court of equity would operate as a fraud upon their rights.

The Court below, after hearing upon bill, answer and full proof, decreed that the contract be specifically performed and from this decree the defendants have appealed.

The special objections and grounds upon which the defendants by their answer resist the specific execution of the contract in this case are, first, that no legal tender of the money named in the contract was made on the second day of January, 1912. Second, that there was such fraud in the transaction as vitiates and avoids the contract. Third, that the execution of the contract was procured by fraud and misrepresentation and by illegal and improper concealment of facts known to the plaintiff while acting as the agent of the defendants, in the sale of the property, which information was withheld and concealed from them. Fourth, that the contract was entered into by reason of a misrepresentation on their part, which was induced by the misrepresentation of the plaintiff and one W. W. Anderson, as to the purpose for which the farm was desired; that the plaintiff and Anderson were acting as agents for the defendants, and were required to secure for them the best price possible, while in truth and in fact, they were acting for themselves and their associates and their whole effort to lower the price of the property was designed for the benefit and advantage of themselves and their associates in a company then about to be formed, and, Fifth, that by means of the pretended agency of the plaintiff and Anderson the defendants were induced to part with their property at a grossly inadequate price for the benefit of a syndicate of which they were members and in which they were concerned.

As to the first objection that no proper tender of payment of the money on the 2nd of January, 1912, was made the defendants as required by the contract little need be said.

Apart from the testimony of the witnesses Long and Dively that a sufficient tender was made, on the 2nd of January, 1912, and the leaving of a deed with Mrs. Lucas for the conveyance of the property to the purchaser, it appears from the record, that in November, 1911, the defendants had determined not to execute their contract with the plaintiff, and had returned the $200 which had been paid to their attorney with instructions to their attorney that they would

not carry out the contract, and the plaintiff was notified of their conclusion on the 3rd of January, 1911, by letter.

Secondly, was the contract price agreed to be paid for the property a reasonable and fair one or was the consideration so grossly inadequate, as to justify the defendants in now disregarding and repudiating the contract?

It appears from the record, that the property had been sold in 1910, by W. W. Anderson for $65 per acre, the purchaser paying $1,000 in cash and executing a mortgage for $10,674.00 represented by one note of $1,000.00 and another for $9,674.00. The property was afterwards purchased from Anderson's vendee, by the defendants subject to this mortgage, and the proof shows that sometime in the early part of 1911, the defendants not being able to pay the accrued interest offered to deed the property back to the mortgagee, upon the payment to them of $1,000. The property was subsequently sold to the plaintiff by the defendants after negotiations between them from May, 1911, to August, 1911, at the sum of $90 per acre, according to the contract, set out herein.

There is no evidence in the record to sustain the contention that $90 per acre was not a fair market value of the property when the contract for its sale was made by the parties.

In *Cochran* v. *Pascault,* 54 Md. 1, it is said, that where a contract relating to real estate, is in writing, and is in its nature and circumstances unobjectionable, it is as much a matter of course for a Court of equity to decree a specific performance of it, as it is for a Court of law to give damages for a breach of it; that the fairness or hardship of a contract, like all its other qualities, must be judged of at the time it was entered into; if it was then certain, mutual, fair in all its parts, and for an adequate consideration, it is immaterial that by force of subsequent circumstances it has become less beneficial to one party, unless such change is in some way the fault of the party seeking its specific execution. *Smoot* v. *Rea,* 19 Md. 405; *Brewer* v. *Herbert,* 30 Md. 301.

In *Marble Co.* v. *Repley,* 10 Wall. 357, it is said, It is by no means clear that a Court of equity will refuse to decree the specific performance of a contract, fair when it was made, but which has become a hard one by the force of subsequent circumstances.

In *Willard* v. *Tayloe,* 8 Wall. 571, the Supreme Court said, the question in such cases always is, was the contract, at the time it was made, a reasonable and fair one? If such were the fact, the parties are considered as having taken upon themselves the risk of subsequent fluctuations in the value of the property, and such fluctuations are not allowed to prevent the specific enforcement. *Frye on Specific Performance,* 252.

Third, the alleged fraud and deceit relied upon by the defendants to avoid the contract is based upon the theory that the plaintiff and Anderson were their agents, in procuring the sale, and the defendants were induced by false, fraudulent and deceitful representations made by both the plaintiff and Anderson to execute the contract.

The fraud and deceit is asserted to consist in two alleged facts; first, that the plaintiff and Anderson represented to the defendants that the purchase of the land was being made to be used as a dairy farm, and, second, the concealment of the fact that there was pending a development and improvement in the vicinity of the defendant's property, that would greatly enhance its value.

We concur in the conclusion reached by the learned judge who decided this case in the Court below that the proof fails to show that the plaintiff and W. W. Anderson, or either of them were the agents of the defendants, in the sense of occupying a confidential relation, in procuring and effecting the sale of the property, here in controversy; that the misrepresentations as to the purpose for which the property was desired, were immaterial, although false and did not work an actual injury to the defendants or was the moving cause for entering into the contract of sale.

We find nothing in the facts as disclosed by the record, that would take this case out of the well settled rules of law, established by numerous decisions of this Court, and as applicable here.

In *McAleer* v. *Horsey,* 35 Md. 439, it is said, the fraud must be material to the contract or transaction which is to be avoided, for if it relate to another matter or to this only in a trivial and unimportant way, it affords no ground for the action of the Court. The fraud must work an actual injury to the party complaining, and it must appear that he not only did in fact rely upon the fraudulent statement, but had a right to rely upon it in the full belief of its truth, for otherwise it was his own folly or fault, and he cannot ask of the Court to relieve him from the consequences.

In *Byrd* v. *Rautman,* 85 Md. 414, it is said, the representation of the motive actuating a buyer cannot be more than a nude assertion, unless it incorporates some false averment of a fact on which the other party relies and ought to rely, and without which the contract, it is reasonable to infer, would not have been made, or suppresses some fact, the knowledge of which it is reasonable to infer would have made the party abstain from the contract altogether.

In 14 *A. & E. Ency. of Law* (2nd Ed.) 66, it is stated and supported by authority. If, however, a misrepresentation is so trivial, that it could not have influenced the conduct of the other party, it is to be regarded as immaterial, and does not amount to fraud though false and known to be false by the party making it.

As stated by the Court below in its opinion, the misrepresentation of the purpose for which the property was wanted had no influence whatever upon the minds of the defendants. The property was not equipped as a dairy farm; in fact, it would seem from the testimony that it was uncleared. The defendants not only knew that the property in its then condition could not be used as a dairy farm, but Mr. Lucas believed it had a value for the purpose for which it was in fact purchased by the plaintiff, for on May 5th, 1911, he wrote

Mr. Anderson: "We will consider offers for purchase, and with my experience in constructing and selling properties I believe a stock company would produce good results to purchasers of stock from treasury for developing the property under my direction, and I would be glad to negotiate with investors." This letter was written the day after the day on which Mr. and Mrs. Lucas have testified that Mr. Anderson first told them the property was wanted for a dairy farm.

In *Burt* v. *Mason,* 97 Mich. 127, the Court said, Mason made no false or fraudulent assertion of existing facts. Neither did he conceal any material facts which he was under a legal or equitable duty to communicate to Mr. Burt. No legal or moral obligation rested upon him to inform Mr. Burt that there was talk or were prospects of a railroad coming to this point, nor that he was making efforts to induce the building of one."

In *Harris* v. *Tyson,* 24 Pa. St. 347, the Court held, that the ignorance of the vendor is not of itself fraud on the part of the purchaser. A purchaser is not bound by our laws to make the man he buys from as wise as himself. * * * Every man must bear the loss of a bad bargain legally and honestly made. If not, he could not enjoy in safety the fruits of a good one.

It follows from what we have said that in our judgment the decree of the Court below was correct, and the same will be affirmed.

*Decree affirmed, with costs.*