## FRIEDMAN v. CLARK

[No. 14, September Term, 1968.]

*Decided January 10, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Alfred S. Fried,* with whom was *Harold J. Rogers* on the brief, for appellant.

*Glenn A. Mitchell* for appellee.

SINGLEY, J., delivered the opinion of the Court.

Mrs. Deena Clark brought suit in the Circuit Court for Prince George's County against I. R. Friedman and Empire Construction Company (Empire) for breach of contract and of warranty. The declaration also sounded in negligence, but this was not considered below and will not be considered by us. From a judgment for $6,893.50 with interest and costs (there having been added to the costs $88.50 incurred in the taking of depositions), entered in Mrs. Clark's favor against both defendants, Mr. Friedman has appealed.

Mrs. Clark lives at 2440 Kalorama Road, in the District of Columbia. Sometime late in February or early in March 1966, Mr. Friedman, who was vice president and treasurer of Empire, came to Mrs. Clark's house to discuss some work which Mrs. Clark wanted to have done. As Mrs. Clark explained, "* * * [T]he house was going to be on a charity tour for the benefit [of] the Home for Incurables, and I wanted a professional all over job so it would be in tiptop shape for that tour." After Mrs. Clark had explained in detail what she wanted, Mr. Friedman prepared a contract:

"March 5, 1966

"This agreement made this 5 day of March 1966, by and between Empire Const. Co. and Mr. and Mrs. Clark hereinafter called the homeowner.

"Contractor agrees to furnish all labor and materials necessary to execute the following work on the premises located at 2440 Kalorama Road N.W. Washington D.C.

1. Repair all concrete on walls of stairs leading to house. Repair walls on driveway. Paint same areas.

2. Repair gutter on front repair gutter over sun porch, and downspout on same area. Clean same out.

3. Sand ceiling in living room and paint same two coats.

4. Patch cracked wall in living room and fill out and paint same wall two coats.

5. Patch cracked walls in sun porch and fill out and paint entire room two coats but do not paint trim.

6. Paint entire outside of home with special masonry paint one coat only. Scrape stucco where necessary and patch. All bad trim to be scraped and two coats applied.

7. The work shall be done in a good workmanlike manner, and with best quality materials. All standards guaranteed by manufacturers of materials.

"In witness whereof the parties hereto have set their hands this 5 day of *March* 1966.

> Total price (3790.00). To be paid
> on completion.
> /s/     Deena Clark
>        OWNER (Mrs. Blake Clark)
> EMPIRE CONST. CO.
> /s/   BY:  I. R. Friedman
>        CONTRACTOR."

At this time, Mrs. Clark was not aware that Empire was a corporation with little or no assets, primarily engaged in estimating repair costs for insurance companies, nor did she know that Empire had neither the facilities nor the personnel which would be required to perform the contract, and proposed to have all of the work done by subcontractors.

According to Mrs. Clark, at the time the contract was signed, the following colloquy took place with Mr. Friedman:

"* * * I had to go with my husband to Hawaii on a business trip, therefore, couldn't supervise it.

"He said, 'I will supervise it. I will be here. I will

see everything they do. I will see that everything you want done is carried out.' "

In response to the question, "Did you give him any consideration for that personal guarantee you just told us about?" Mrs. Clark replied, "Of my own volition I gave him a check for $1,000. He had assured me that he would do a first rate job, and to show my faith in him I volunteered to give him $1,000 in advance, and I did."

When Mrs. Clark returned from Hawaii, she realized that the work had not been satisfactorily performed. This inspired a more significant conversation between Mrs. Clark and Mr. Friedman on 1 April. As she described it,

"Q. Now, immediately upon your return from Hawaii did you make a further payment to Mr. Friedman? A. Yes. He admitted that all of these things were wrong on the third floor. He looked at the concrete and he said, 'That is terrible. We will just do that over.'

"And I showed him the sills that needed repainting. He said, 'That certainly will be done over. That is terrible.'

"I took him on the second floor and showed him where it hadn't been painted. He said, 'That will be done over.'

"And he sent a man to do it over. Everything I showed him he said it was quite right, that he agreed to do it over, that it was wrong.

"Q. Did you make a payment to him then? A. Yes, because he came to me. He said everything was going to be done correctly. I believed him. And so I said, 'Well, all right, I will give you another $1,000 if you personally guarantee that this is going to be done.'

"He said, 'I personally guarantee it.'

"So, I sat down to make out the check.

"And he said, 'Mrs. Clark, could you make that $1,700, and then it will be just an even $1,000 you will owe upon completion.'

"Q. Subsequent—A. So, I made him a check for $1,700." [1]

During his pretrial deposition, later admitted as evidence in the case, Friedman admitted that he had guaranteed the work:

"Question: Did you orally warrant the work done under the contract?

"Answer: Yes.

"Question: And in addition you warranted it in the contract?

"Answer: Yes.

"Question: You personally?

"Answer: Yes."

Mrs. Clark produced testimony that the exterior paint had peeled, the concrete work had disintegrated, the leaks in the house and the gutters had not been repaired, the plaster had cracked, and the interior painting and carpentry had not been properly done. The lower court concluded that a workmanlike job would involve an outlay of $5,000 for sandblasting, $1,400 for painting, $394 for repairs to concrete, and $99.50 for replacement of shrubbery and entered judgment for $6,893.50 against Empire and Friedman.

Friedman assigns two reasons for the reversal of the judgment against him:

1. A contract signed "Empire Construction Company by I. R. Friedman, Contractor" imposes no personal liability on Friedman.

2. Friedman's guaranty that the work would be done in a workmanlike manner was not supported by consideration, and a claim based upon it is barred by the Statute of Frauds.

For the purposes of this opinion, we shall assume the correctness of Friedman's first contention, and consider the second, which we regard as the only issue in the case.

As we see it, Friedman's argument that his personal guar-

---

1. This check, offered in evidence in the case, was actually for $1,790.

anty was not supported by consideration is without merit. Clearly it was his agreement to supervise the work personally which induced Mrs. Clark to advance $1,000 on 5 March and his personal guaranty which led her to pay $1,790 on 1 April. Under the terms of the contract no payment was due until the work was completed. It is of no consequence that the advance payments were not received by Friedman. Consideration can be found in the detriment to Mrs. Clark. *Clay v. Chesapeake & Potomac Telephone Co.*, 184 F. 2d 995 (D.C. Cir. 1950); *Owens v. Liff*, 65 A. 2d 921 (D.C. Mun. App. 1949); *Belfiore v. B. J. Crivella, Inc.*, 60 A. 2d 542 (D.C. Mun. App. 1948); *Humbird v. Humbird*, 162 Md. 582, 160 A. 623 (1932); *Hercules Powder Co. v. Harry T. Campbell Sons Co.*, 156 Md. 346, 144 A. 510 (1929); *Chicora Fertilizer Co. v. Dunan*, 91 Md. 144, 156, 46 A. 347 (1900); Restatement, *Contracts* (1932) § 75. Under our decisions, the fact that the checks were received by Empire, of which Friedman was an officer and stockholder, was of sufficient benefit to him to support his promise. *Gordon v. State Nat'l Bank*, 249 Md. 378, 384, 239 A. 2d 915 (1968); *Foland v. Hoffman*, 186 Md. 423, 47 A. 2d 62 (1946).

Nor are we persuaded by Friedman's argument that Mrs. Clark's claim on his guaranty is barred by the Statute of Frauds. In the first place, this question was not raised below. Maryland Rule 885, which provides that "This Court will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court; * * *" is enunciatory of long established practice. Chapter 117, Laws of Maryland (1825); Maryland Code (1951) Art. 5, § 10; *Gordon v. State Nat'l Bank, supra*, 249 Md. at 383; *Schiller v. Lefkowitz*, 242 Md. 461, 219 A. 2d 378 (1966). In *J. A. Laporte Corp. v. Pennsylvania-Dixie Cement Corp.*, 164 Md. 642, 165 A. 195, 168 A. 844, 108 A.L.R. 1474 (1933) our predecessors held that the Statute of Frauds could not be raised for the first time on appeal. In passing, we note that Friedman would have shouldered a more onerous burden in the District of Columbia, where the Statute must be affirmatively pleaded as a defense. *Cavalier v. Weinstein*, 80 A. 2d 918 (D.C. Mun. App. 1951); *Saunders System Washington Co. v. Kuffner*, 75 A. 2d 136 (D.C. Mun. App. 1950).

The result would not, however, have been different had the Statute of Frauds been raised as a defense below. District of Columbia Code (1967) § 28-3502 provides:

> "An action may not be brought * * * to charge the defendant upon a special promise to answer for the debt, default, or miscarriage of another person * * * unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing, which need not state the consideration and signed by the party to be charged therewith or a person authorized by him."

For the purposes of this case, there is no significant difference between the form of the Statute in force in the District and 29 Car. 2 (1676), Chapter 3, Section IV (2), 2 Alexander's British Statutes (Coe Ed., 1912) at 509, which is in force in Maryland. Consequently, there is no need for us to consider whether the Statute is of a substantive or procedural nature. *Simmons Co. v. Crew,* 84 F. 2d 82 (4th Cir. 1936); *Lams v. F. H. Smith Co.,* 36 Del. (6 Harr.) 477, 178 A. 651 (Super. Ct. 1935); Restatement, *Conflict of Laws* (1934) § 334, comment b at 412, § 598, comment a at 715, § 602, comment a at 719; 2 Corbin, *Contracts* (1950) § 293 at 68. *Compare,* however, *Fort Worth Packing Co. v. Consumers' Meat Co.,* 86 Md. 635, 39 A. 746 (1898).

Decisions of this Court recognize that testimony recorded in open court will, under appropriate circumstances, take the case out of the Statute. *Janowitz v. Slagle,* 250 Md. 140, 242 A. 2d 123 (1968); *Pollin v. Perkins,* 223 Md. 532, 165 A. 2d 908 (1960); *Dove v. White,* 211 Md. 228, 126 A. 2d 835 (1956); *Kaufmann v. Adalman,* 186 Md. 639, 47 A. 2d 755 (1946); *Sealock v. Hackley,* 186 Md. 49, 45 A. 2d 744 (1946); *Trossbach v. Trossbach,* 185 Md. 47, 42 A. 2d 905 (1945); 2 Corbin, *supra,* § 320 at 152. *Compare,* however, *Lambdin v. Przyborowski,* 250 Md. 108, 242 A. 2d 150 (1968).

As Judge (later Chief Judge) Markell, speaking for this Court in *Trossbach v. Trossbach, supra,* said:

> "Under existing procedure, the purpose of the Statute of Frauds is to protect a party, not from tempta-

tion to commit perjury but from perjured evidence against him. The purpose of evidence is to prove facts. Admissions of a party in testifying, though in form evidence, are in essence not mere evidence, but make evidence against him unnecessary. * * * We think the Statute of Frauds requires no more.

"Furthermore, admissions of a party in the form of testimony would constitute sufficient 'memoranda' under Section 4 or Section 17, or 'writings' under Section 7, of the statute. For this purpose we think recorded testimony should be regarded as equivalent to signed depositions." 185 Md. at 55, 56.

So far as we have been able to ascertain, the courts of the District of Columbia have not addressed themselves to this question, and we assume that the District will follow Maryland law in instances where its courts have not spoken. *Seidenberg v. Seidenberg,* 126 F. Supp. 19, 22 (D.D.C. 1954).

Had Friedman relied on the Statute of Frauds, we would have concluded that his admission that he had guaranteed the work took the case out of the Statute and would have amply supported the result reached below.

*Judgment affirmed; costs to be paid by appellant.*