# HARRY L. GLADDING ET AL. *v.* LANGRALL, MUIR & NOPPINGER

[No. 101, September Term, 1978.]

*Decided May 28, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Bayard Z. Hochberg* for appellants.

*Rob Ross Hendrickson,* with whom were *Henry M. Decker, Jr.,* and *Frank M. Benson, Jr.,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This is a civil action begun in the Superior Court of Baltimore City by respondent Langrall, Muir & Noppinger, a certified public accounting partnership, to collect the balance allegedly due it from the petitioners, Harry L. Gladding and his mother, Virginia L. Gladding, for professional services rendered them under a contingent fee contract. Before the trial court, the Gladdings defended the suit by asserting: first, the respondent, by nonperformance, breached its obligation under the contract so as to prevent it from recovering any amount, a contention now abandoned in this Court; and second, in any event, the contingent fee called for by the contract proved to be so unconscionable that the obligation should be rescinded and, under their counterclaim, repayment of the retainer fee the respondent received from the petitioners should be ordered. At a nonjury trial, Judge Basil A. Thomas decided all issues in favor of the accounting firm and entered judgment for it in the amount of $30,639. In an unreported decision the Court of Special Appeals affirmed and we granted certiorari.[1]

The record discloses that following an audit, the United States Internal Revenue Service, by its report dated June 16, 1969, assessed the Gladdings and several corporations they controlled or owned approximately $1,300,000 in additional taxes and penalties for the years 1961 through 1966. Understandably concerned about such a mammoth tax deficiency, Mr. Gladding, at the suggestion of his personal attorney, John Demyan, Esq., contacted Mr. Herbert Langrall, senior partner in the respondent firm, concerning this Internal Revenue Service claim. When, after reviewing the matter, Mr. Langrall realized there would be considerable legal acuity involved in resisting the tax assessment, he suggested that Jacques Schlenger, Esq., a partner in the Baltimore law firm of Venable, Baetjer and Howard, be contacted and that a conference be arranged to discuss the taxpayers' potential employment of each of these professional service firms. This suggestion was followed and at the ensuing meeting, which took place in early January of

---

1. We previously had this case before us to settle a procedural issue. See Langrall, Muir & Nopp'r v. Gladding, 282 Md. 397, 384 A. 2d 737 (1978).

1970 with Messrs. Gladding, Demyan, Schlenger, and Langrall present, the employment of the two firms, and their respective obligations, was verbally agreed upon. Separate formal documents recording the previous understanding relative to the employment of each firm were executed several weeks later by the respective parties. As to compensation, the Gladding-Langrall agreement, after providing for the payment to the accounting firm by the taxpayers of a $10,000 retainer fee, in pertinent part states:

> Upon the completion of the tax matters above described (whether by administrative agreement, closing agreement, litigation, etc.), in addition to the above described retainer, [Langrall, Muir & Noppinger] shall be paid, by such taxpayers, an additional sum equal to 4% of the first $700,000 of savings (as hereinafter defined) and 3% of any savings in excess of $700,000, such additional fee to be paid immediately upon consummation of such settlement, however arrived at.

> \* \* \*

> This represents the complete agreement between the parties and [Langrall, Muir & Noppinger] cannot guarantee any results and does not do so, but only guarantees its very best efforts.[2]

The evidence discloses that, utilizing the inhouse review procedures afforded by the Internal Revenue Service, the tax dispute was eventually settled, largely through the efforts of Venable, Baetjer and Howard, with a resulting saving to the Gladdings of $1,121,000. When the petitioners, based on their assertion of nonperformance on the part of Langrall, declined

---

2. The Gladding-Schlenger understanding was dated the same day and is in substantially the same form as the Gladding-Langrall agreement, except it provides for the payment of a retainer fee of $20,000 and compensation in the amount of 16% of the first $700,000 saved and 12% of any additional savings. It also contains the following provision:

> [Venable] shall have control of any accounting work done in connection with this case and, in this connection, is aware of the fee agreement of even date between the above taxpayers and [Langrall, Muir & Noppinger] relating to this case.

to pay, after allowing a credit for the $10,000 retainer already received, the $30,639 allegedly due the accounting firm under the Langrall-Gladding contract, this suit was instituted. It is undisputed that Langrall's time sheets revealed the public accounting firm logged only seventeen hours of professional services in the matter and accordingly made a somewhat minimal contribution toward obtaining the favorable settlement these taxpayers enjoyed.

While not urging in this Court, as they did below, that the respondent breached its contractual obligations, the Gladdings do vigorously contend here that the disparity between the work actually performed by the respondent accounting firm and the compensation contractually payable for those services is so great the agreement is unconscionable and therefore should not be enforced.[3] We do not agree.[4]

The short answer to this contention made by the petitioners is, as the previous decisions of this Court make plain, that when determining whether an entire contract or any of its parts is so unconscionable as to justify its judicial rescission or cancellation, the matter will not be judged by hindsight but by the situation as it existed at the time the bargain was struck. *Gross v. J & L Camping & Sports,* 270 Md. 539, 546, 312 A. 2d 270, 275 (1973); *Pollin v. Perkins,* 223 Md. 532, 544, 165 A. 2d 908, 913 (1960); *The Glendale Corp. v. Crawford,* 207 Md. 148, 154, 114 A. 2d 33, 36 (1955); *Lucas v. Long,* 125 Md. 420, 427-28, 94 A. 12, 14-15 (1915); *Cochran v. Pascault,* 54 Md. 1, 18 (1880); E. Miller, *Equity Procedure* § 681, at 787-88 (1897). Put another way, and in the words of Chief Judge

---

3. An unconscionable bargain or contract has been defined as "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Black's Law Dictionary* 1694 (rev. 4th ed. 1968) (citing cases).

4. For purposes of this opinion we will assume, without deciding, that such a defense — one in effect requesting that the compensation provision of the agreement be rescinded, or cancelled — is cognizable in a law action rather than one in equity, and will further assume, also without deciding, that the defense put forth here can be presented under the general issue pleas filed in this case rather than by a special plea on equitable grounds as authorized by Maryland Rule 342 d 1 (a). See Nydegger v. Gitt, 125 Md. 572, 578, 94 A. 157, 159 (1915); Whitaker v. McDaniel, 113 Md. 388, 391-92, 78 A. 1, 2 (1910); Conner v. Groh, 90 Md. 674, 683-84, 45 A. 1024, 1026 (1900); Refining Co. v. Campbell & Zell Co., 83 Md. 36, 55-58, 34 A. 369, 372-73 (1896); Taylor v. State, Use of Miller, 73 Md. 208, 221-22, 20 A. 914, 916 (1890).

Brune for this Court in *Pollin v. Perkins, supra,* 223 Md. at 544, 165 A. 2d at 913, "the fairness or hardship of a contract is to be determined as of the time when it is made, not on the basis of subsequent changes in conditions which may make it less beneficial to one party and more beneficial to the other than at the time when it was entered into." *Cf.* Md. Code (1975), § 2-302 (1) of the Commercial Law Article (unconscionable contract for the sale of goods).

With this well-established principle before us, it becomes obvious the Gladdings cannot avoid paying Langrall the agreed fee. Petitioners make no assertion, nor in our view could they successfully do so, that the bargain was in any way unfair at the time the understanding was reached by all the parties involved. In fact, these taxpayers' primary concern here — the disparity between the fee now due and the number of hours of labor required — was apparently of minimal, if any, moment to them when the employment contracts were negotiated. A perusal of the record here makes it quite clear that in entering into both the legal and accounting service agreements the taxpayers were concerned not with the number of hours of labor the attorneys or accountants would expend but with obtaining the evaporation of their astronomical tax assessment. This statement is amply demonstrated by the fact that the Gladdings agreed to a contingent fee arrangement rather than a fixed fee contract. Contingent fee service employment contracts, by their very nature, establish a willingness on the part of the employer to compensate the employee for achieving a favorable result rather than for the number of hours required to obtain that end. In other words, contingent fee arrangements involve a gamble by both parties to the bargain, with the degree of success or failure of the undertaking determining the amount due. Further, bearing in mind that the maximum total percentage the petitioners could be required to pay to both the legal and accounting firms was only twenty percent of any tax savings and that the petitioners had the benefit of the advice of their personal attorney throughout the entire time the employment contract was being negotiated, it is difficult

to see how they could challenge the fairness of the contract at the time it was entered into.[5]

Thus, viewing the employment bargain as it necessarily appeared to the parties at the time it was entered into, we can see nothing unconscionable or otherwise legally objectionable that will defeat this suit. To reach any other conclusion, we think, would have the effect of this Court making a new agreement for these litigants. This is an activity we decline to undertake, as did our predecessors over a century ago when, in considering the validity of a contingent fee contract, they observed:

> [I]t is urged, that however the parties may have made their contract, that there is such inadequacy between the consideration and the amount to be paid, occasioned by the subsequent events, that it would be unjust to hold the maker bound. Assuming the contract to be subsisting, is there any force in this objection? ... Whether he made a good or bad bargain, or received a full equivalent for what he promised to pay, cannot affect the legal character of his obligation.
>
> Parties contracting, must determine for themselves the value and benefit of the consideration, as of the other constituents of their contract.
>
> It is not the province of the Courts to interfere

---

5. Petitioners have suggested that the intensive scrutiny courts have employed in examining contracts between attorneys and their clients should likewise be applied to agreements entered into between other professionals, such as accountants, and their clients. This suggestion, however, ignores the basis for the broader judicial interest in attorney-client contracts, which exists only because of the attorney's status as an officer of the court. For a discussion of the role of the court in regulating attorneys and their fees see Mortgage Inv. v. Citizens Bank, 278 Md. 505, 511-14, 366 A. 2d 47, 50-52 (1976) (Levine, J., dissenting). Moreover, any assertion that the accountant-client affiliation, being one of confidence, requires the heightened scrutiny afforded the attorney-client relationship is without significance here, because, even assuming such confidentiality likewise attaches to the accountant and his client, no such accountant-client association existed between petitioners and respondent until after the employment contract in question here was entered into. *See* Setzer v. Robinson, 57 Cal. 2d 213, 368 P. 2d 124, 126, 18 Cal. Rptr. 524, 526 (1962).

with the natural right of parties to contract, and to exercise their own will and judgment upon the subject; and they have the power to estimate the value of the consideration and the benefits to be derived from their contracts, where there is no incompetency to contract, no fraud or surprise, and no rule of law is violated. [*Taylor v. Turley,* 33 Md. 500, 504-05 (1871).]

There being no basis to disturb the agreement made by the parties, we will affirm the judgment as entered.

> *Judgment of the Court of Special Appeals affirmed.*
> *Costs to be paid by the petitioners.*